*382 MATHIAS, Judge,
concurring.
I agree that Officer Miller lacked reasonable suspicion to detain Griffin for the purpose of investigating a possible crime, and therefore, Griffin was free to disregard Officer Miller’s order to stop. Accordingly, I concur fully in the majority’s conclusion that Griffin’s conviction for resisting law enforcement must be reversed. However, I write separately to address concerns about Officer Miller’s conduct in this case, particularly given his suspicion that Griffin suffered from a mental illness at the time in question.
Officer Miller testified that prior to detaining Griffin, he did not suspect that Griffin had committed a criminal offense, but he observed that Griffin was possibly mentally ill. See tr. p. 16. Had Officer Miller approached Griffin as a person who might need mental health treatment, this case would have turned out for the better, in every regard. Our mental health statutes provide that any law enforcement officer, who has “reasonable grounds to believe that an individual has a mental illness, is either dangerous or gravely disabled, and is in immediate need of hospitalization and treatment, may ... [ajpprehend and transport the individual to the nearest appropriate facility.” Ind.Code § 12 — 26^4—1.
On the record before us, Griffin’s motions in the officer’s direction were observed by way of Officer Miller’s rearview mirror, and when filtered through our statutory mental health detention criteria, would generally not even rise to the level of concern to justify involuntary detention. By any account, Griffin could not have appeared truly dangerous to himself or to others, or gravely disabled to the degree that he appeared to be in immediate need of hospitalization and treatment. Sadly, there are far too many Indiana citizens who are mentally ill to such a noticeable degree that they appear “troubled,” but not to such an extent that they might reasonably seem to' be dangerous or disabled. Simply said, Officer Miller could have justifiably decided not to intervene in the first place.
That said, we must also recognize the dilemma we put our law enforcement officers in regarding persons like Griffin. “A healthy, civil society is most robust when it feels safe and when that feeling of safety is validated through interaction with vigilant and responsive law enforcement engaged in the important business of policing neighborhoods within a community.” R.H. v. State, 916 N.E.2d 260, 268 (Ind.Ct.App.2009), trans. denied (Mathias, J., concurring). In his role as a community caretaker, Officer Miller would have acted reasonably had he chosen to intervene in order to assess Griffin as a person with possible mental illness and to proceed accordingly, rather than to treat the encounter as a potential criminal offense from the outset. Had he done so, according to the evidence in the record, Griffin would have certainly appeared troubled, but not to the extent of appearing to be dangerous or gravely disabled, warranting immediate hospitalization and treatment.
There was no evidence in the record that would establish that Officer Miller had reason to believe that Griffin might have been involved in criminal activity, that he was a danger to the officer or members of the community, or a danger to himself. When Griffin ran from Officer Miller, the officer had not seized Griffin within the meaning of the Fourth Amendment, and had no constitutionally permissible reason to do so; therefore, Griffin was free to disregard his order to stop. See Gaddie, 991 N.E.2d at 141. Thankfully, Griffin was not injured when he was tazed during the incident, but the tazing likely would not have occurred at all had Officer *383 Miller initially assessed Griffin under Indiana’s mental health law, rather than under its criminal law.
Finally, it is important to remember that Officer Miller did what he was trained to do in the situation. What I hope and mean to suggest is that law enforcement officials throughout Indiana can best reaffirm their commitment to serve all of Indiana’s citizens by remembering the criteria for mental health intervention as an initial alternative to treating troubling and troubled, but otherwise innocuous, conduct as a possible crime.
For all of these reasons, I concur in Senior Judge Shepard’s opinion reversing Griffin’s conviction for resisting law enforcement.